## E. N. ROWELL CO. v. WILLIAM KOEHL CO.

(District Court, W. D. New York.   August 31, 1914.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MACHINE FOR MAKING PA-.
PER BOXES.

The Rowell & Little patent, No. 844,190, for a paper box making machine, was not anticipated and is valid, but in view of the prior art is of narrow scope and limited to the construction shown in the specification. As so construed, *held* not infringed.

In Equity.   Suit by the E. N. Rowell Company against the William Koehl Company.   On final hearing.   Decree for defendant.
See, also, 194 Fed. 446.

Briesen & Knauth, of New York City, for complainant.
A. C. Wade, of Jamestown, N. Y. (Melville Church, of Washington, D. C., and Frank Keiper, of Rochester, N. Y., of counsel), for defendant.

HAZEL, District Judge.   The Rowell & Little patent, No. 844,190, issued February 12, 1907, on application filed May 15, 1894, infringement of which is charged in the bill, relates to paper box making machines.   Composing the top and bottom portions of the boxes are three separate and distinct parts, which are united by the co-operation of different instrumentalities embodied in the patented machine, such parts being (1) a ring or cylinder; (2) a disk, which is automatically pressed against the top of the ring; and (3) a wrapper or strip of paper for pasting the ring and disk together in such a way that the wrapper encircles the outside of the ring and projects at the edges.   The top and bottom parts of the box are similar, save that an additional projecting ring is inserted in the bottom portion, over which the top portion is fitted.   In finishing the boxes the operator removes them from the mandrel, and the edge of the wrapping paper at the disk end of the ring is pressed against the flat side of the disk, while the edge at the open end is pasted down on the inner side of the ring.   The additional ring is then inserted in the bottom portion of the box, and a decorative strip of paper is sometimes added; but with these features we are not here concerned, as the patent in suit is simply for automatically uniting the disk and ring by a strip of gummed paper.   Although the paper ring is manually placed on the upper mandrel while it is at rest, and the box afterwards removed therefrom by hand, the ring and disk are nevertheless joined together by automatic action of the machine—that is, by the intermittent rotation of a frame to which the mandrels are attached. The specification says:

"This invention relates to a machine for making paper boxes composed of a cylindrical body and a circular head, which are united by a band of gummed paper wound around the body and the head.   One object of our invention is to produce a machine in which the feeding of the heads and the winding of the bands are effected automatically."

The claims relied upon are broadly for a combination of elements, and they read as follows:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"1. The combination, with the movable table or support, of a mandrel movable toward and from said table or support, substantially as set forth."

"3. The combination, with the reciprocating table, of mandrels adapted to bear successively against said table, and a rotary frame provided with bearings supporting said mandrels, substantially as set forth."

"5. The combination, with the movable table, of a rotary frame, shafts journaled in said frame, and provided with mandrels adapted to bear against said table, substantially as set forth."

Claim 1 emphasizes the use of a mandrel in combination with a movable table or support, and claim 3 of a reciprocating table in combination with the mandrels to bear successively against the said table, while the fifth claim refers to the movable table with mandrels bearing against it. According to the specification, the paper disks, which are contained in a cylindrical magazine attached to the rear side of the main frame, are automatically brought, by means of a follower device, against the ring, which has been manually placed upon the upper mandrel while the wrapper is carried along on a raised portion of the reciprocating table.

The important defenses are invalidity, limitation of the claims, and noninfringement. It is sharply disputed that the claims in controversy are of narrow scope and limited to the reciprocating or movable table; the complainant contending that the claims are sufficiently broad to include the pressing wheel used by the defendant in co-operation with the rotatable mandrels.

If the patent is not a basic one, the charge of infringement is not sustained. The principal patents cited to limit the scope of the claims are the patent to Terry, No. 25,373, dated September 6, 1859, to Maxfield, No. 52,432, dated February 6, 1866, to Hatfield, No. 67,050, dated July 23, 1867, and No. 100,621, dated March 8, 1870, and to Johnston, No. 514,149, dated February 6, 1894. There is no doubt in my mind that the combination in suit of a reciprocating or movable table with two mandrels, or a rotating frame movable towards and from said table, with the various instrumentalities for pasting the disk to the ring body, was an improvement over the prior art, which prior art, however, precludes construing the claims in suit broadly enough to include defendant's machine, even though it achieves the same result. Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100.

It is insisted that there is a radical difference between complainant's machine and those of the prior art, which, as shown by the evidence, were for making hat boxes, collar boxes, and powder and cascarilla boxes. No reference whatever is found in the specification and claims in suit limiting the patent to the automatic manufacture of pill boxes, or small-sized boxes, as distinguished from large ones; and complainant's machine is, I think, readily adaptable to the manufacture of different sizes and types of paper boxes, and therefore the prior art figures as an important factor in the determination of the scope of the disputed claims.

Referring to the prior art, it appears that Maxfield, many years before the patent in suit, manually operated a machine for making collar boxes; the specification describing mechanism for securing a cylindrical body to a circular head by means of a strip of paper wound around

the box body, the instrumentalities for winding which consisted of a rotary mandrel co-operating in its forward and backward movements with a rotary pressing wheel. It is true that complainant's combination for making paper boxes is not disclosed, but with a reciprocating table in place of the pressing wheel, automatically operated, there would no doubt be a disclosure of claim 1 in suit.

The Hatfield patent, No. 100,621, is an important reference, and describes a machine for making so-called French edge boxes; that is, boxes with projecting disk edges, around which a paper strip or band is symmetrically pasted. In this machine a mandrel is used, on which is formed the box body in co-operative relation with a rotary pressing wheel or flanged roller; the latter being used to bind the gummed strip of paper to the ring and disk for the purpose of uniting them. The ring is placed on the mandrel as the pressing wheel is moved therefrom, and the circular heads are continuously fed to the rings from a magazine on the machine. The difficulties claimed by complainant to have existed in devising machines for making French edge boxes were apparently overcome by Hatfield in his adaptation of a suitable grooving in the pressing wheel, which received the edge and at the same time conducted the wrapping paper over it to the lower side of the box pressing it firmly thereto. See, also, Hatfield patent, No. 67,050, dated July 23, 1867, which had a fixed flange suitably marked or grooved for making French edge boxes.

There are, of course, obvious dissimilarities between the claims in suit and the Hatfield patent; for example, Hatfield, as already indicated, relied on the pressing wheel to perform the function of complainant's movable or reciprocating table, and he employed a single mandrel, quartered to separate and expand at the head, to secure the strip of gummed paper to the box frame, and also to assist in wrapping it around the projecting edge. The box parts were united by the joint action of a head rotated by power and a rotating pressing wheel. A magazine was provided for storing the disks and feeding them automatically and successively to the mandrel upon which the box was formed at the point where the pressing wheel contacts with the wrapping paper. In my judgment this patent negatives the asserted pioneer character of complainant's invention.

In the Partureau patent, No. 507,035, dated October 17, 1893, for pasting strips of paper on boxes, there is shown mechanism for winding wrapping paper around a box and into the opening edge by automatic means. The patent is not for making boxes, and is only important as showing that the patentees herein were not the first to devise automatic instrumentalities for pasting wrapping paper on a box frame, so as to overlap at the bottom of the box and to extend into the box opening. Complainant's expert witness is in doubt as to the practicability of the Partureau wrapper pasting device, but the specification, in its carefully detailed disclosure of the method for feeding the wrapping paper forward to the mandrel, seems to me to establish its operativeness.

In the Weil British patent, No. 12,180, there is shown a rotary frame having two mandrels attached thereto, one being idle while the other bears the box blank. True, there is no assembling of a disk

and box ring as in complainant's and defendant's machines; but the materiality of the Weil patent resides in the disclosure of a rotary frame gearing two mandrels which operate intermittently. The feature of the rotating frame with two mandrels of complainant's machine was therefore old, and it obviously did not involve invention to adapt such feature to a different type of box making machine or one that embodied additional instrumentalities. See, also, the Fairfield and Witherall patent, No. 409,674.

The complainant, however, urges the inoperativeness of the prior art, especially with reference to French edge boxes, and contends that the Hatfield structures were merely mechanical aids to hand labor and did not supersede the earlier methods of making paper boxes, while complainant's patent made a distinct advance in the art, with the result that paper boxes are no longer made by hand. But there is considerable evidence in the record to show that the Hatfield patents were fairly practicable and operative. Several machines made in accordance therewith were operated by Kerr & Co. in 1870 for making pill, paste, and powder boxes, and subsequently another machine was built under this patent for making collar boxes. Hatfield, who was sworn, firmly testified that he distinctly remembered that his machines were adapted to turn the edges of the paper into the inside of the box, and explained that the wrapping paper was not automatically fed continuously to the machines, because at that time strips of paper on reels were not considered suitable for such work. There was also testimony by the witness Wilcox, corroboratory of Hatfield, to the effect that not only collar boxes, but pill boxes as well, were made on Hatfield machines, which he recalls had mandrels and pressing rollers suitably grooved for making French edge boxes. The witness Conderman, who also operated the Hatfield invention, testified that boxes of various sizes and kinds were made thereon, and that the machines were rapidly operated, doing away with considerable hand labor. All of which testimony reasonably satisfies me that the patentees herein were not the first to automatically make French edge paper boxes, and that the machines of Hatfield operated with considerable success for an extensive period.

Defendant's machine is covered by patent No. 1,098,314, issued since the hearing to Clark & Illy, patentees. It has a frame and pressing wheel not unlike those of Maxfield and Hatfield; it has box forms on two mandrels which operate intermittently to perform their functions. While complainant's reciprocating head or table carries or supports a strip of wrapping paper, which at the proper time is wrapped around the box body or ring and disk on the mandrel, and the wrapping paper is cut in lengths sufficient for binding or wrapping one box as the reciprocating table goes to the left, the defendant's machine does not operate in this manner. The latter's strip of paper is not supported in its rotation, but is extended from the reel above the pressing wheel to the box at the head of the mandrel. The wrapping paper is not cut in lengths before it is wrapped around the box as in complainant's patent, but is severed while the wrapping is in process. The restricted scope that, in view of the disclosures of the

prior art, must be accorded the claims in suit, will not permit the defendant's pressing wheel to be considered the equivalent of complainant's movable or reciprocating table, and defendant's adaptation is deemed a material differentiation from complainant's combination.

The defendant claims that the prior Johnston & Marshall patent, No. 514,149, granted February 6, 1894, owned by the complainant company, was a complete anticipation of the patent in suit, and there was considerable testimony in relation thereto. The record shows that in 1890 the witness Johnston was employed by Rowell & Little at Batavia, N. Y., and remained with them for about six months. While so employed he saw there at the factory a box making machine having a circular table, which after leaving the employment he improved, and together with Marshall received therefor the patent under discussion. Claims covering the broad invention were included in said patent, and when Rowell & Little learned of this they began negotiations with Johnston & Marshall to obtain a disclaimer through their solicitors, who had previously prepared the drawing and specification for Johnston. Rowell & Little asserted that the solicitors had erroneously credited Johnston with the broad invention of their box making machine invented by them. The negotiations resulted in a separation of the broad and specific claims, the former being voluntarily disclaimed by Johnston in February, 1894, and on March 3, 1894, the patent was duly assigned to Rowell & Little. A concession of priority was also signed, stating in effect that Rowell & Little, and not Johnston, were the inventors of the machine embodied in the patent in suit.

Defendant contends that the disclaimer and concession of priority were fraudulently obtained, in that both Johnston and Marshall were under age at the time of their execution, and that the purpose, according to defendant's brief, was to suppress the disclaimer for over seven years, and to withhold from the public any knowledge of the invalidity of the Johnston patent, and of the proposed Rowell & Little patent, or the application therefor. Inasmuch as the evidence shows that guardians were duly appointed for both Johnston and Marshall before either the disclaimer, concession of priority, or assignment of the patent were executed and delivered, it is difficult to perceive the commission of any fraudulent act in relation thereto.

It further appears that, after the delivery of the assignment and concession of priority, Rowell & Little filed an application for the patent in suit, which was several times rejected on the Johnston & Marshall patent, and that finally interference was declared, and, the concession of priority having been filed, it was acted upon and the patent issued. Invalidity of the patent in suit is also urged by defendant on the ground that the concession of priority was without the written consent of the assignees of the patent, and that the disclaimer was void for failure to promptly file the same. But in my judgment the validity of the patent in suit was not affected by such failure, or by any of the proceedings relating to the Johnston patent, and it is therefore unnecessary to treat of them more fully.

My conclusion is that claims 1, 3, and 5 of the patent in suit are

valid, but were not for a pioneer invention, and that they are in fact of narrow scope, and must be limited to the construction shown in the specification. Defendant's machine, as hereinbefore stated, is materially different from complainant's, and is not an infringement thereof.

A decree dismissing the bill, with costs, may be entered.